COLEMAN, T.P., Associate Judge.
The sole issue raised in this appeal is whether the trial court was correct in its finding that two contracts for sale and purchase entered into by the appellant, as seller, and the appellee, as buyer, were conditioned upon the appellee obtaining mortgage financing.
The record clearly reflects that there was no representation by the appellant or its agent that the contracts were subject to such a contingency. The question then becomes whether the written contracts themselves contained language upon which one could reasonably determine that the contracts were contingent upon mortgage approval.
Each of the two contracts was identical except for the description of the condominium unit and the amounts of money required to be paid to fulfill each contract. Following are certain paragraphs from the contract related to unit Number 2C7. The contract for unit Number 1D3 contains identical operative language:
2. PURCHASE PRICE AND METHOD OF PAYMENT:
A. The purchase price for the Condominium Unit No. 2C7, as described in Paragraph 1 above is acknowledged to be $84,000.00, (including boat-slip) plus any extras specifically ordered by BUYER, and any such extras shall be ordered in writing by BUYER and paid for with the order.
B. Said purchase price shall be payable by BUYER as follows:
$ 7,400.00 DEPOSIT paid simultaneously herewith, receipt of which is hereby acknowledged by SELLER. (Not less than 10% of the Purchase Price shall be held by the undersigned Escrow Agent.)
$ 67,000.00 MORTGAGE BALANCE, if applicable as set forth herein. (See 7.C for details.)
$ 8,400.00 CASH BALANCE due from BUYER at closing, and closing to be as provided hereinafter.
*991 Paragraphs 7C and 7D of the contracts then provide as follows:
C. Permanent loans are available from First Federal Savings and Loan Association of Mid-Florida to qualified buyers in an amount not to exceed 80% of the sales price or the appraisal, whichever is less for a term not to exceed 30 years. Interest rate on permanent loans will be the prevailing rate at the time of commitment. Permanent loans may be in the form of a renegotiable rate mortgage. No commitment will be issued sooner than 30 days from developers obtaining their Certificate of Occupancy. In addition to all normal closing costs, a 1½% loan fee will be charged on each permanent loan by the lender.
D. If BUYER desires to pay part of the purchase price from the proceeds of a first mortgage loan from other sources, BUYER may obtain such first mortgage loan through his own efforts, provided, however, that this Agreement shall not be subject to BUYER obtaining such first mortgage loan and the closing of this sale and purchase shall be as if BUYER did not require a first mortgage loan. BUYER shall pay all costs of obtaining such first mortgage loan.
Paragraph 9 of each of the contracts provides as follows:
Should BUYER fail to make any of the payments due hereunder, as hereinablve (sic) scheduled, or fail or refuse to execute the instruments required to close this transaction and the first mortgage, if any, or refuse to pay any costs or other sums required by this Agreement or otherwise default hereunder, and shall fail to correct such default within five (5) days after SELLER has given BUYER written notice of such default, then SELLER may declare this Agreement cancelled and retain all monies paid by BUYER including interest accrued on deposits made by BUYER as liquidated and agreed upon damages which SELLER shall have sustained and suffered as a result of BUYER’S default, and thereupon the parties hereto will be released from all obligations hereunder.
This Court cannot alter the factual findings of the trial court if there is any reasonable basis upon which the trial court’s findings might be warranted. However, we cannot read any of the above cited language to mean that the contracts were contingent upon the appellee qualifying for any mortgage financing. The language of the contracts clearly suggests that mortgage financing is available but does not base the obligations imposed by the contracts upon such financing.
Accordingly, we find that the trial judge erred in granting a summary judgment in favor of the appellee, and reverse that judgment for proceedings consistent with this opinion.
REVERSED.
DAUKSCH and COWART, JJ., concur.